## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ──────────────────────── | : |  |
| **CHUN IK CHANG,** *on behalf of himself* | : |  |
| *and those similarly situated*, **et al.,** | : | **Civil Action No. 18-2388 (MAH)** |
|  | : |  |
| **Plaintiffs,** | : |  |
|  | : |  |
| **v.** | : | **OPINION** |
|  | : |  |
| **FRONTLINE ASSET STRATEGIES,** | : |  |
| **LLC, et al.,** | : |  |
|  | : |  |
| **Defendants.** | : |  |
| ──────────────────────── | : |  |

### HON. MICHAEL A. HAMMER, U.S.M.J.

This matter comes before the Court on Defendants' motion to dismiss these consolidated actions.  Mot. to Dismiss, Oct. 2, 2023, D.E. 99.  Plaintiffs oppose the motion.  Pls.' Opp'n, Oct. 23, 2023, D.E. 100.  Defendants filed a reply in further support of their motion.  Reply, Nov. 9, 2023, D.E. 103.  The Court has considered this motion without oral argument.  *See* Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Undersigned concludes that this Court lacks jurisdiction over this action and grants Defendants' motion to dismiss.

### I.     BACKGROUND

On February 20, 2018, Plaintiff, Chun Ik Chang, initiated a civil class action on behalf of himself and similarly situated parties by filing a complaint against Defendants, claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Compl., Feb. 20, 2018, D.E. 1, at 1.  Plaintiff Chang names Frontline Asset Strategies, LLC ("Frontline") and Razor Capital II, LLC ("Razor") as Defendants.  *Id.*  He alleges Defendants violated the FDCPA "by attempting to collect consumer debts on behalf of debt buyers . . . without a license to do so under

the New Jersey Consumer Finance Licensing Act N.J. Stat. Ann. § 17:11C-3; thereby attempting to collect amounts not permitted by law." *Id.*

On June 21, 2018, Plaintiff, Georgina C. Sandoval, initiated a civil class action on behalf of herself and similar situated parties by filing a complaint against Defendants, claiming violations of the FDCPA.  Compl., Civ. Action No. 18-10904, June 21, 2018, D.E. 1, at 1.  Plaintiff Sandoval names Defendants Absolute Resolutions Investments, LLC; Absolute Resolutions Corporation; Frontline; Andrew Dunn; Bryon Kozak; Mark Naiman; and Daniel Winkler.  *Id.*  Plaintiff Sandoval asserts the same violation of the FDCPA as Plaintiff Chang.  Compl., June 21, 2018, D.E. 1, at 2.

On August 8, 2019, Plaintiff Chang filed a form *Notice, Consent, and Reference of a Civil Action to a Magistrate Judge* for the Undersigned to conduct all further proceedings, including entry of a final judgment, which the District Judge at the time, Judge McNulty, entered on August 9, 2019.  Ltr. to Ct., Aug. 8, 2019, D.E. 30; Consent to Jurisdiction by U.S. Magistrate Judge, Aug. 9, 2019, D.E. 31.  Having reached a tentative agreement to settle both the *Chang* and *Sandoval* matters, on April 28, 2020, the Undersigned entered a consent order consolidating the *Chang* and *Sandoval* matters and applying the previously entered consent to Magistrate Judge Jurisdiction to both matters.  Consent Order, Apr. 28, 2020, D.E. 40.  The order for consolidation provided that "in the event that the consolidated class action settlement cannot be finalized, the case will be deconsolidated."  Order, Apr. 28, 2020, D.E. 40, at 3.

For the next few years, the parties engaged in discovery to confirm Defendants' net worth to facilitate the parties' entering into a binding settlement agreement.  During this time, the Undersigned engaged with the parties on many occasions in an attempt to resolve a myriad of discovery disputes that arose concerning Defendants' net worth, albeit unsuccessfully.  *See* Ct.

Order, February 5, 2021, D.E. 54; Ct. Order, June 6, 2022, D.E. 73; Ct. Order, June 14, 2022, D.E. 75. This Court finally referred the disputes to a Special Discovery Master on February 22, 2023, but that too ultimately proved unsuccessful. *See* Confidential Joint Status Report, July 13, 2023. In that July 13, 2023 joint status report, Defendants indicated that any issue regarding the disputed financial discovery and settlement agreement was not moot because neither Plaintiff could demonstrate Article III standing and sought leave to file a motion to dismiss. *Id.* at 3-4. On September 1, 2023, the Court held a status conference in which the parties agreed that a binding settlement had not been reached, and therefore briefing on Defendant's challenge to Plaintiffs' standing should proceed. Order, Sept. 1, 2023, D.E. 95. Despite the April 28, 2020 Order, neither party moved for deconsolidation of these matters, nor has contacted the Court regarding the deconsolidation of the matters.

On October 2, 2023, Defendants filed the instant joint motion to dismiss for lack of jurisdiction. Ds.' Mem. of Law in Supp. of Mot. to Dismiss, Oct. 3, 2023, D.E. 99-1. On October 23, 2023, Plaintiffs submitted an opposition on behalf of both Plaintiffs Chang and Sandoval. Pls.' Opp'n, Oct. 23, 2023, D.E. 100. On November 9, 2023, Defendants submitted a reply brief in further support of their motion. Reply, Nov. 9, 2023, D.E. 103.[1]

## II.   DISCUSSION

### A.  Article III Standing

It is well-settled that federal courts are courts of limited jurisdiction. Article III of the United States Constitution limits the power of the judiciary to decide only "cases" or "controversies." U.S. Const. art. III, § 2. Plaintiffs seeking to demonstrate that a case or

---

[1]  As neither party moved for deconsolidation, and the parties' submissions addresses both Plaintiffs, the Court continues to treat both cases as consolidated. Accordingly, today's opinion addresses and applies to both Plaintiff Chang and Plaintiff Sandoval.

controversy exists for purposes of Article III must prove that they have "standing," or a personal stake in the matter. *Gottlieb v. JH Portfolio Debt Equities, LLC*, No. 22-01020, 2022 WL 17730891, at *2 (D.N.J. Sept. 22, 2022). "Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims." *Madlinger v. Enhanced Recovery Co.,* LLC, No. 21-00154, 2022 WL 2442430, at *3 (D.N.J. July 5, 2022).

To establish standing, the party asserting jurisdiction must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct by the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). An injury in fact is one that is "(a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The inquiry into whether an injury is "concrete" and "particularized" is a distinct one. *See Spokeo, Inc.*, 578 U.S. at 339-41. An injury is particularized if it affects the plaintiff personally. *Id.* at 339. On the other hand, an injury is concrete only if it is "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Because Plaintiffs here were the recipients of the debt collection letters, their injury is certainly particularized. However, the parties disagree over whether the alleged injury is concrete.

The Supreme Court's 2021 decision in *TransUnion LLC v. Ramierz*, 594 U.S. 413, 425 (2021), has impacted how courts evaluate the concreteness prong. *TransUnion* requires courts to scrutinize whether the plaintiff has plead a harm that "is sufficiently concrete to qualify as an injury in fact." The Supreme Court expressly rejected the notion that "a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341). Instead, a plaintiff must allege a concrete injury separate and apart from an injury under the law.

4

*Id.* ("[A]n injury in law is not an injury in fact."); *Perez v. I.C. System, Inc.*, No. 21-14883, 2022 WL 17991143, at *3 (D.N.J. Dec. 29, 2022) ("Where a plaintiff merely alleges a 'bare procedural violation, divorced from any concrete harm,' the injury-in-fact requirement of Article III is not satisfied.") (quoting *Spokeo,* 578 U.S. at 341).

In *TransUnion*, the plaintiffs alleged the defendant, TransUnion, a credit reporting agency, violated the FCRA by failing to take reasonable measures to ensure the accuracy of their credit files. 594 U.S. at 421-22. TransUnion's internal credit file for each plaintiff and class member contained a misleading alert because their names resembled the name of an individual on the federal government's list of terrorists, drug traffickers, and other serious criminals. *Id.* at 431-34.

The Supreme Court differentiated between two types of concrete injuries—those that are tangible and intangible. Where a defendant has caused a tangible harm—i.e., a physical or monetary harm—the plaintiff will have suffered a concrete injury in fact. *Id.* at 424-25. Intangible harms may also be concrete, so long as those injuries bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425 (providing examples of traditional claims including reputational harms, disclosures of private information, and intrusion upon seclusion). The Supreme Court concluded that only 1,853 of the 8,185 class members had standing to sue. *Id.* at 431-32. Those class members with standing had their reports disseminated to third-party businesses, and therefore were vulnerable to "hatred, contempt, or ridicule." *Id.* at 432. Consequently, the Court reasoned that the 1,853 class members had "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." *Id.* The Court further reasoned that the remaining class members lacked standing because their injury was predicated solely on the existence of a misleading alert in a consumer's internal credit file. *Id.* at 433. Because their reports had not been disseminated or published to any third-party

during the relevant period, those class members had not been subject to defamation.  *Id.* at 435.
Thus, the Court concluded that the mere inaccuracy in their credit files caused no concrete harm.
*Id.*

### B.  Analysis of Plaintiffs' FDCPA Claims

The Court must determine whether Plaintiffs have suffered a concrete injury in fact so as
to provide them with standing to pursue their FDCPA claims in federal court.  Plaintiffs concede
they have not suffered a tangible harm. Pls.' Opp'n, Oct. 23, 2023, D.E. 100, at 15 ("As explained
below, Plaintiffs' standing rests on an intangible but nevertheless concrete harm.").  As such, the
Court conducts the two-part inquiry pronounced by the Supreme Court in *TransUnion*: (1) does
the alleged injury bear a close relationship to a traditionally recognized harm; and (2) have
Plaintiffs plead more than mere injury in law.  *Rohl v. Prof. Fin. Co., Inc.*, No. 21-17507, 2022
WL 1748244, at *3 (D.N.J. May 31, 2022); *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, No.
21-16013, 2022 WL 2289560, at *4 (D.N.J. June 24, 2022).  Plaintiffs argue that their injuries
implicate two common law analogues: the intentional tort of unreasonable debt collection and
fraudulent misrepresentation.  The Court addresses each argument in turn.

### a.  The Intentional Tort of Unreasonable Debt Collection

Plaintiffs argue that they possess Article III standing based on the intentional tort of
unreasonable debt collection.  Pls.' Opp'n, Oct. 23, 2023, D.E. 100, at 24-32.  To support their
argument, Plaintiffs cite a litany of cases where "the defendant did more than try to collect the debt
but sought to coerce payment or inflict retribution for nonpayment."  *Id.* at 30.  Defendants call
this Court's attention to a recent decision in this District, *Church v. Collection Bureau of the
Hudson Valley, Inc.*, -- F.Supp 3d. --, No. 20-3172, 2023 WL 8185669, at *5  (D.N.J. Nov. 27,
2023), and argue that unreasonable debt collection is not a traditional tort and therefore Plaintiffs

cannot establish standing.  *See* Ds.'s Ltr. to Ct., Nov. 28, 2023, D.E. 104.  This Court agrees with Defendants and finds that Plaintiffs do not have standing based on the tort of unreasonable debt collection.

The tort of unreasonable debt collection is recognized in one jurisdiction, Texas. *See Duty v. Gen. Fin. Co.*, 154 Tex. 16 (Tex. 1954); *Pullins v. Credit Exch. Of Dallas, Inc.* 538 S.W.2d 681 (Tex. Civ. App. 1976), *writ refused NRE* (Dec. 31, 1976); *Marshall v. United Fin. & Thrift Corp.*, 347 S.W.2d 623 (Tex. Civ. App. 1961).  The intentional tort of unreasonable debt collection has four elements.  First, "the defendant 'made unreasonable collection efforts against the plaintiff.'" *Church*, 2023 WL 8185669, at *5 (quoting *Moore v. Savage*, 359 S.W. 2d 95, 96 (Tex. Civ. App. 1962)).  Second, "the defendant undertook unreasonable collection efforts with 'reckless disregard of the health and welfare of plaintiff.'" *Id.* (quoting Boe W. Martin, *A Creditor's Liability for Unreasonable Collection Efforts: The Evolution of a Tort in Texas*, 9 S. Tex. L.J. 127, 128-29 (1966)).  Third, "the unreasonable collection efforts 'were a proximate cause of . . . physical illness and mental and emotional pain." *Id.* (quoting *Moore*, 359 S.W. 2d. at 95).  Fourth, "the defendant intended such harm." *Id.* (citing *Moore*, 359 S.W. 2d. at 96).

As noted, whether the tort for unreasonable debt collection could sustain Article III standing was recently addressed in this District.  *See Church*, 2023 WL 8185669, at *26.  In *Church*, when analyzing the plaintiffs' standing, the Court found this tort could not be considered a traditional cause of action because the plaintiffs failed to demonstrate "that a meaningful number of courts have recognized the tort."  *Id.*  In its evaluation, the Court highlighted the importance of traditional causes of action as related to the doctrine of standing because "[s]tanding . . . is rooted in Article Ill's invocation of 'Cases' and 'Controversies.' And the Supreme Court has indicated that the meaning of those terms can be understood, to an extent, by looking to the sorts of cases

and controversies that 'American courts' have, in fact, historically handled." *Id.* at *14. Accordingly, because the tort for unreasonable debt collection "was not prevalent enough to be traditional . . . . the [p]laintiffs have not carried their burden to establish standing." *Id.* at *26.

Here, Plaintiffs cite to only one Texas case that references the tort of unreasonable debt collection. *See Marshall v. United Fin. & Thrift Corp.*, 347 S.W.2d 623 (Tex. Civ. App. 1961). This Court agrees with the Court's reasoning in *Church*, and declines to conclude that one case, and one jurisdiction which recognizes the tort of unreasonable debt collection   n is sufficient to establish that this tort as a traditional cause of action which confers standing. *See Church*, 2023 WL 8185669, at *26. Plaintiffs' reliance on the remaining cases is misplaced for several reasons. First, none are from this jurisdiction. More importantly, the underlying torts in those cases are unrelated to the elements of the tort of unreasonable debt collection. *See Clark v. Associated Retail Credit Men*, 105 F.2d 62 (D.C. Cir. 1939) (where the underlying tort concerned intentional infliction of emotional distress); *Muetze v. Tuteur*, 77 Wis. 236, 46 N.W. 123 (1890) (where the underlying tort concerned libel); *Engle v. Simmons*, 148 Ala. 92, 41 So. 1023 (1906) (where the underlying tort was physical injury caused by a wrongful act); *Woodling v. Knickerbocker*, 31 Minn. 268, 17 N.W. 387 (1883) (where the underlying tort concerned libel); *Brents v. Morgan*, 221 Ky. 765, 299 S.W. 967 (1927) (where the underlying tort invoked a right to privacy); *Thompson v. Adelberg & Berman, Inc.*, 181 Ky. 487, 205 S.W. 558 (1918) (where the underlying tort concerned libel); *Barnett v. Collection Serv. Co.*, 214 Iowa 1303, 242 N.W. 25 (1932) (where the underlying tort concerned intentional infliction of emotional distress); *Barnett, La Salle Extension Univ. v. Fogarty*, 126 Neb. 457, 253 N.W. 424 (1934) (where the underlying tort concerned intentional infliction of emotional distress). As these cases "have no meaningful connection to the tort of unreasonable debt collection" they are "irrelevant here and must be put to

8

the side." *Church*, 2023 WL 8185669, at *7-8.

Even if this Court were to determine that unreasonable debt collection amounts to a traditional cause of action, the circumstances of the instant matter surely do not satisfy the requisite elements of unreasonable debt collection.  As noted, the tort has four elements: (1) unreasonable collection efforts have been made against the plaintiff; (2) these efforts were taken with a reckless disregard of the welfare and health of the plaintiff; (3) the collection efforts were the proximate cause of any physical distress and emotional and mental pain of the plaintiff; and (4) the defendant intended such harm against the plaintiff.  *Id.* at *5.  Here, Defendants' actions can hardly be characterized as unreasonable or reckless.  For example, the letter from Frontline to Plaintiff Chang, informs him that a judgment was entered against him in 2014, and that he owed $962.57.  Civ. Action No. 18-2388, Ex. A, D.E. 1-1, at 1.  Similarly, the letter to Plaintiff Sandoval simply states that her "account has been turned over to Frontline" and that she currently owed $1,199.30.  Civ. Action No. 18-10904, Ex. A, D.E. 1-1, at 1.  Indeed, the Court cannot find the content of the letters to be threatening, hostile or aggressive, nor can the Court find that Defendants' action of alerting Plaintiffs of the amount of money owed to be threatening or harassing.  Accordingly, this Court rejects Plaintiffs' arguments and finds that the tort of unreasonable debt collection does not confer standing for Plaintiffs' claims.

### b. Fraudulent Misrepresentation

Plaintiffs also argue that they have standing based on the tort of fraudulent misrepresentation.  Although not pled in Plaintiff Chang's Complaint, he now argues he suffered an emotional and financial consequence as a result of Defendants' letter.  Pls.' Opp'n, Oct. 23, 2023, D.E. 100, at 33-34.  Relying on *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023), Plaintiff Chang now seeks to amend his Complaint to allege the expenses he incurred "to consult

with a lawyer after experiencing emotional distress" because the letter falsely represented Plaintiff Chang owed the listed debt.  *Id.* at 33.  Defendants counter that neither the debt collection agencies were required to disclose they could not collect Plaintiff Chang's debts and that even if there was an FDCPA violation it was "out of statute as the judgment was entered more than a year prior to the filing of his Complaint."  Reply, Nov. 9, 2023, D.E. 103, at 7.  This Court rejects Plaintiffs' arguments and declines Plaintiff Chang's request to amend his Complaint.

To establish fraudulent misrepresentation, a plaintiff must prove: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Rohl*, 2022 WL 1748244, at *4 (quoting *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *7 (D.N.J. Mar. 30, 2021)).  The touchstone thus appears that there be some form of reliance on the debt collection letters. However, "a plaintiff must allege some 'downstream consequences' or 'adverse effects' from receiving false or misleading information in violation of the FDCPA."  *Perez*, 2022 WL 17991143, at *5 (quoting *Daye v. GC Servs. Ltd. P'ship*, No. 21-7981, 2022 WL 4449381, at *3 (D.N.J. Sept. 23, 2022)).  Mere receipt and review of debt collection letters, without more, cannot confer standing.  *See Daye*, 2022 WL 4449381, at *3; *Vaughan*, 2022 WL 2289560, at *5 (finding that plaintiff's connection of deceptive debt collection practices to the common-law analogue of fraudulent misrepresentation fails because the plaintiff failed to allege any form of reliance). Indeed, in the aftermath of *TransUnion*, "courts consistently hold that 'merely receiving a letter from a debt collector that was confusing or misleading . . . does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance."  *Schultz v. Midland Credit Mgmt., Inc.*, No. 16-4415, 2022 WL 3013082, at *3 (D.N.J.

10

July 29, 2022) (collecting cases); *Perez*, 2022 WL 17991143, at *4 (collecting cases).

In *Huber*, 84 F.4th at 142, the Third Circuit addressed the tort of fraudulent misrepresentation as related to the FDCPA.  In that case, the plaintiff brought allegations under 15 U.S.C. § 1692e of the FDCPA based on a letter received from the defendant, a debt collection agency.  The plaintiff alleged that the letter failed to clearly indicate the total amount she owed to the defendant because it listed two different sums.  *Id.*  According to the plaintiff, the letter was so confusing, and as a result, the plaintiff did not pay either listed the listed amounts and instead hired a financial advisor at her own expense.  *Id.*  The District Court determined that the plaintiff had standing under the informational injury doctrine.  *Id.* at 141.  The Third Circuit concluded that the plaintiff had standing, however, not based on the informational injury doctrine.  Rather, the Third Circuit concluded the plaintiff possessed standing because "the financial harm she suffered in reliance on the letter b[ore] a 'close relationship' to the harm associated with the tort of fraudulent misrepresentation."  *Id.* at 141.  First, the Circuit concluded that the allegations under 15 U.S.C. § 1692e were analogous to the tort because the federal statute "involve[] deception, and the statutory prohibition on the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,' [and therefore] . . . 'protect[s] essentially the same interests' as that 'traditional cause[ ] of action.'"  *Id.* at 148 (internal citations omitted).  Next, The Third Circuit explained the second prong to achieve standing was met because the confusion the debt collection letter caused the plaintiff's reliance which resulted in financial consequences—the plaintiff's consultation with a financial advisor and her failure to pay down the debt.  *Id.* at 149.

As a preliminary matter, neither Plaintiff Sandoval nor Plaintiff Chang have pled any allegations which demonstrate an injury in fact like that in *Huber*.  For example, both Plaintiff Chang's and Plaintiff Sandoval's complaints are devoid of any mention of incurred expenses,

actions taken, or possible inactions as a result of the letters.  *See generally* Comp., Civ. Action No. 18-2388, Feb. 20, 2018, D.E. 1; Compl., Civ. Action No. 18-10904, Compl., June 21, 2018, D.E. 1.  Accordingly, Plaintiffs do not possess standing based on the Complaints as they currently stand. However, the Court's analysis does not end here, as Plaintiff Chang now argues, for the first time, he should be granted to leave to amend his Complaint.  Pls.' Opp'n, Oct. 23, 2023, D.E. 100, at 33.

> i.   **Whether Plaintiff Chang has demonstrated good cause to amend his Complaint under Rule 16[2]**

On January 30, 2019, this Court entered a Pretrial Scheduling Order ("PTSO") for this matter.  *See* PTSO, Jan. 30, 2019, D.E. 20.  Within that PTSO, Plaintiffs were given until June 30, 2019 to amend the pleadings or add new parties.  *Id.* at ¶ 12.  Plaintiffs never sought to amend that deadline in the PTSO.  However, Plaintiffs now argue Plaintiff Chang should be permitted to amend his Complaint, to "assert allegations which fall under *Huber*."  Pls.' Opp'n, Oct. 23, 2023, D.E. 100, at 34.  As this request comes beyond the June 30, 2019 deadline this Court conducts its analysis under Fed. R. Civ. P. 16 and finds that Plaintiffs have not demonstrated good cause to amend Plaintiff Chang's Complaint.

"[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate good cause for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading."  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (3d Cir. 2010) (internal quotations omitted).  Therefore, a motion to amend filed after the PTSO's deadline is subject to a heightened level of scrutiny.  *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014).  Only

---

[2]  Plaintiffs seek only to amend Plaintiff Chang's Complaint.  Accordingly, this Court's analysis does not address Plaintiff Sandoval's Complaint under Rule 16 or Rule 15 as related to any possible amendments.

if the moving party has made the requisite showing of good cause under Rule 16 will the Court consider "whether the proposed amended pleading meets the [Rule] 15(a) standard." *Home Semiconductor Corp. v. Samsung Elecs. Co.*, No. 13-2033, 2019 WL 2135858, at *2 (D. Del. May 16, 2019).

Whether the good cause requirement under Rule 16 is met is dependent on the diligence of the party seeking to modify the scheduling order. *Korrow*, 300 F.R.D. at 220. Therefore, "if the party was not diligent, there is no good cause for modifying the scheduling order and allowing the party to file a motion to amend its pleading." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007). A showing of good cause illustrates that, despite the movant's attentiveness, "the deadlines set forth in the scheduling order could not reasonably be met." *Id.*; *see also Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990). In addition, "good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012) (alteration in original) (quoting *Phillips v. Greben*, No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006)). Courts have consistently found that "the standard is not satisfied when a party was aware of the facts that would lead it to amend and failed to act on it." *Roggio v. F.B.I.*, No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug.17, 2011). "[A] party is presumptively not diligent if, at the commencement of the lawsuit, the party knows or is in possession of information that is the basis for that party's later motion to amend." 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007). *See also Kennedy v. City of Newark*, No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is

the party's knowledge of the potential claim before the deadline to amend has passed.").

Plaintiffs have not demonstrated good cause for their failure to seek to amend Plaintiff Chang's Complaint prior to the PTSO deadline.  Plaintiffs summarily argue that this Court should permit amendment to allow Plaintiff Chang to "assert allegations which fall under *Huber*."  Pls.' Opp'n, Oct. 23, 2023, D.E. 100, at 34.  However, Plaintiffs do not argue, or attempt to explain why the facts alleged in Plaintiff Chang's declaration were not pled in his initial Complaint.  Indeed, Plaintiff Chang was aware of his actions throughout the entirety of this litigation.  Further, this is not an instance where factual circumstances were unknown to Plaintiff Chang, and later came to light through discovery.  *See McGrath v. Rainbow Pediatrics*, P.C., No. 19-4714, 2021 WL 3616749, at *3 (D.N.J. Aug. 16, 2021) (finding good cause to reopen scheduling order where plaintiff did not learn fact necessary to support proposed claims until deposition of key witness); *see also Ohana Enterprises, LLC v. Mourer Foster, Inc.*, No. 21-10175, 2024 WL 640753, at *3 (D.N.J. Feb. 15, 2024) ("Notably, neither Rule 15 nor Rule 16 stands for the proposition that a party can amend the complaint each and every time she becomes aware of new factual allegations that already support the allegations as set forth in the complaint." (internal quotations omitted)). It is true that *TransUnion* and *Huber* were both decided following the deadline set forth in the PTSO.  However, *TransUnion* established that to maintain standing under the FDCPA, the plaintiff would need to plead more than an injury in law.  *TransUnion*, 594 U.S. at 433, 439.  This Court therefore finds that since the Supreme Court's decision in 2021, or any of the decisions within this District that followed, Plaintiff Chang was on notice of this change in law.  Yet, from 2021 until the instant motion to dismiss, he did not seek leave to amend the Complaint to include these factual circumstances. This is in spite of several joint status reports and conferences held before the Undersigned.  *See* Jt. Status Report, May 23, 2022, D.E. 72; Ct. Order, July, 6, 2023, D.E. 92; Ct.

Order, December 29, 2022, D.E. 86; Ct. Order, Aug. 17, 2023, D.E. 94.  Indeed, in the parties'

July 13, 2023 confidential joint status report, where Defendants raised the issue of standing in the

Complaints, specifically referencing *TransUnion*, Plaintiffs still did not seek to amend. Further,

the parties' active engagement in settlement negotiations throughout the pendency of this action,

does not relieve Plaintiffs of the requirement to exercise diligence under Rule 16.  *See Napolitano*

*v. Ragan & Ragan PC*, No. 15-2732, 2017 WL 278475, at *3 (D.N.J. Jan. 20, 2017) (finding no

good cause where the plaintiffs should have requested an extension of the deadline to amend the

Complaint in the PTSO because "the parties continued to litigate this action and engaged in

settlement negotiations").  Accordingly, this court finds that Plaintiffs have failed to establish good

cause under Rule 16.

### ii.   Whether Plaintiff Chang has demonstrated he can amend his Complaint under Rule 15

Even if this Court were to find good cause to permit amendment of Plaintiff Chang's

Complaint, this Court finds that the proposed amendment would not be appropriate under Rule 15,

because of its futility.[3]  *See Joy v. Perez,* No. 10-01636, 2011 WL 221700, at *3 (D.N.J. Jan. 21,

2011) (holding "[b]ecause [p]laintiffs have not shown 'good cause' [under Rule 16], the Court

need not — and, in fact, cannot — proceed to an analysis of whether prejudice exists and whether

to grant leave to amend the Complaint under Rule 15(a)").

If a plaintiff has demonstrated good cause under Rule 16, the Court then turns to see if it

should grant his or her request to amend the Complaint under Rule 15.  "Federal Rule of Civil

---

[3]  Because the (1) Court finds that Plaintiff Chang's proposed amendment to the Complaint would be futile and (2) because Plaintiffs have not offered any substantive legal arguments relative to Rule 16 or Rule 15 in their request to amend Plaintiff Chang's Complaint, the Court declines to address the additional factors of Rule 15 such as, undue delay; bad faith or dilatory motive; undue prejudice; and repeated failures to cure deficiencies.  *See Berk v. Ritz Carlton Condominium Assoc.*, No. 19-20666, 2021 WL 5277459 at *4 (D.N.J. Nov. 12, 2021) .

Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15 (a)(2)).   The Court may deny a motion to amend the pleadings only where there is (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").

This Court finds any amendment to Plaintiff Chang's Complaint would be futile, and therefore denies leave to amend under Rule 15.   Here, Plaintiff Chang wishes to amend his Complaint to include statements made in his attached declaration.   Specifically, Plaintiff Chang seeks to add to his Complaint that after receiving his letter from Frontline, the Kim Law Firm advised him to bring them the original letter, causing him to "get into [his] car and dr[i]ve over [to] [his] lawyer's office with the letter," causing Plaintiff Chang to "obviously incur[] the expense for gas and wear-and-tear on [his] car." Plaintiff Chang Decl., D.E. 100-4, at ¶ 6.   Plaintiff Chang's purported amendments would be futile for two reasons.   First, to the extent that Plaintiff Chang wishes to assert he incurred expenses in retaining his attorney as a result of the letter "this 'alone cannot be a concrete injury sufficient to establish standing, or it would completely swallow the standing analysis under Article III.'"   *See Daye*, 2022 WL 4449381, at *3 n.3 (quoting *Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *7 n.11 (S.D.N.Y. Sept. 10, 2021)). Second, the Court finds Plaintiffs' reliance on *Huber* as support for their argument to amend

16

Plaintiff Chang's Complaint to be misplaced.  In *Huber*, it was the plaintiff's reliance on the confusing collection letter which directly caused her to incur the financial consequences, therefore establishing a concrete harm.  *See Huber*, 84 F.4th at 148-49 ("It is the physical, monetary, or cognizable intangible harm, such as a reputational or emotional harm, that may follow from a plaintiff's reliance upon the misrepresentation." (internal citations and quotations omitted)).  The same cannot be said of the circumstances here.  Plaintiff Chang does not propose he was confused in anyway by the letter as to the actual amount of his debt, unlike the plaintiff in *Huber*.  *Id.* at 142 ("Huber was confused after reading the letter as to how much she owed in total.").  Rather, Plaintiff Chang is claiming that he would not have reacted so emotionally and would not have drove the letter to his lawyer's office had he been aware that Frontline was not licensed to collect his debt. Plaintiff Chang Decl., D.E. 100-4, at ¶ 8.  However, Plaintiff Chang's drive to his attorney's office was at the instruction of the Kim Law Firm's paralegal—not due to any reliance on the letter received by Frontline.[4]  At bottom, the Court finds that Plaintiffs have failed to allege any concrete harm stemming from their receipt of the debt collection letters.  Plaintiffs have plead a mere injury in law, but no concrete injury in fact.  Such a finding is fatal to their claims for purposes of standing

---

[4]  The Court finds Plaintiffs' reliance on *Church v. J. Ritter Law P.C.*, No. 23-1709, 2023 WL 4353544, at *3 (D.N.J. July 5, 2023) for the proposition that the nominal amount incurred from driving the letter to his lawyer is sufficient to confer standing, is misplaced as it is factually distinguishable from this case.  In *Church*, 2023 WL 435344, at *1, the plaintiff received a letter from the defendant, a law firm, regarding a debt the plaintiff allegedly owed.  The letter specifically stated that the plaintiff had thirty-days to dispute the debt in writing.  *Id.*  The plaintiff spent $7.38 to send his written dispute to the law firm.  In evaluating whether the plaintiff possessed standing under the FDCPA, the Court determined that the $7.38, though small in amount, was sufficient to establish an injury in fact for purposes of Article III standing.  Here, Plaintiff Chang's expenses were incurred not due to the letter, but due to the advice of his attorney.  Nothing in Frontline's letter could be perceived as causing Plaintiff Chang to drive the letter to his attorney.  Indeed, Plaintiff Chang's declaration specifically states that it was through the Kim Law Firm's own instruction that they obtain the original letter.  Plaintiff Chang Decl., D.E. 100-4, at ¶ 6.  As such, this Court declines to determine if the undisclosed "expense for gas and wear-and-tear on [Plaintiff Chang's] car" constitutes an injury in fact.

in federal court.  Finally, no amendments to either Complaints would cure this deficiency.

**III.     CONCLUSION**

   For the reasons set forth above, Defendants' motion, D.E. 99, is granted.  An appropriate Order accompanies this Opinion.

                *s/ Michael A. Hammer*
                **United States Magistrate Judge**

**Dated**: March 21, 2024